UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

6500 Cherrywood Lane
Greenbelt, Maryland 20770
Telephone: (301) 344-3593

July 30, 2018

LETTER TO COUNSEL:

   RE: *Lois Nason v. Nancy A. Berryhill, Acting Commissioner of Social Security*[1]
     Civil No. TJS-17-1604

Dear Counsel:

  On June 13, 2017, Plaintiff Lois Nason ("Ms. Nason") petitioned this Court to review the Social Security Administration's final decision to deny her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (ECF No. 1.) The parties have filed cross-motions for summary judgment. (ECF Nos. 17 & 20.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[2] I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Acting Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will deny Ms. Nason's motion and grant the Acting Commissioner's motion. This letter explains my rationale.

  In her applications for DIB and SSI, Ms. Nason alleged a disability onset date of June 1, 2010. (Tr. 15.) Her applications were denied initially and on reconsideration. (*Id.*) A hearing was held before an Administrative Law Judge ("ALJ") on April 12, 2016, (Tr. 39-69), and the ALJ found that Ms. Nason was not disabled under the Social Security Act (Tr. 15-24). The Appeals Council denied Ms. Nason's request for review (Tr. 1-4), making the ALJ's decision the final, reviewable decision of the agency.

  The ALJ evaluated Ms. Nason's claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Ms. Nason was not engaged in substantial gainful activity, and had not been engaged in substantial gainful activity since June 1, 2015. (Tr. 17.) At step two, the ALJ found that Ms. Nason suffered from the following severe impairments: obesity and degenerative disc disease. (Tr. 17-18.) At step three, the ALJ found that Ms. Nason's impairments, separately and in

---

  [1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

  [2] This case was originally assigned to Magistrate Judge Stephanie A. Gallagher. On May 8, 2018, the case was re-assigned to me.

combination, failed to meet or equal in severity any listed impairment as set forth in 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1 ("Listings"). (Tr. 20.) The ALJ determined that Ms. Nason retained the RFC to perform the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c).[3] (*Id.*)

At step four, relying on the testimony of a vocational expert, the ALJ determined that Ms. Nason was able to perform past relevant work as a graphic designer.[4] (Tr. 23.) Therefore, the ALJ found that Ms. Nason was not disabled under the Social Security Act. (Tr. 23-24.)

Ms. Nason raises four arguments in this appeal. First, she argues that the ALJ did not provide a sufficient narrative discussion in connection with the RFC assessment. (ECF No. 17-1 at 5.) Second, she argues that the ALJ did not evaluate pertinent evidence about her chronic pain and the functional limitations caused by that pain. (*Id.* at 6.) Third, she argues that the ALJ failed to properly evaluate her obesity. (*Id.* at 8.) Fourth, she argues that the ALJ did not properly evaluate her credibility. (*Id.* at 12.) I will address these arguments in turn.

Ms. Nason first argues that the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion [of the RFC], citing specific medical facts and nonmedical evidence." (ECF No. 17-1 at 5-6.) Ms. Nason argues that the ALJ did not explain how she determined that Ms. Nason was capable of performing a full range of medium work. Ms. Nason also argues that the ALJ failed to identify her functional limitations and assess her work-related abilities on a function-by-function basis. (*Id.*) In addition, Ms. Nason specifically notes that the ALJ did not make findings about her ability to perform work-related activities for a full workday, and that she failed to recognize that the opinions of two State agency physicians conflicted with each other. (*Id.* at 6.)

Social Security Ruling 96-8p instructs that an "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis omitted).

The ALJ adequately assessed Ms. Nason's RFC based on the medical evidence. The ALJ summarized the medical records related to Ms. Nason's degenerative disc disease and found that, overall, the records contain few clinical findings, and recommend "mostly routine care with

---

[3] The regulations define medium work as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). A person able to do medium work is necessarily also able to do sedentary and light work. *Id.*

[4] The ALJ also found that Ms. Nason was capable of performing her reported part-time work in customer service, which is performed at the light exertional level. (Tr. 23.)

2

medication and conservative therapy." (Tr. 21.) In addition, the ALJ noted that Ms. Nason reported only moderate pain on several occasions, and that objective imaging revealed "minimal to mild disc degeneration without significant herniation or impingement." (*Id.*) The ALJ also observed that her treating physicians advised her to exercise, get a job, and begin tapering off narcotic medication. (*Id.* at 21-22.) The ALJ stated that on several occasions, Ms. Nason appeared at primary care appointments and "exhibited normal gait, despite complaints of diffuse pain." (*Id.* at 22.)

Ms. Nason is correct that the ALJ did not state that the opinions of the State agency medical consultants were inconsistent with one another. However, the ALJ also gave the opinions little weight because they contained restrictions that were more severe than was warranted. (*Id.* at 22-23.) In making this finding, the ALJ explained that the opinions were inconsistent with the medical records that showed Ms. Nason presenting with normal gait and few clinical findings. (*Id.*) The opinions were also inconsistent with Ms. Nason's subjective reports of only moderate pain on several occasions, the results of objective imaging, and Ms. Nason's self-report of being able to work in a customer service capacity on a part-time basis.[5] (*Id.*) The evidence summarized by the ALJ supports the finding that Ms. Nason can perform medium work. Because the ALJ's narrative RFC discussion and relevant citations to the record enable meaningful review of the ALJ's RFC analysis, Ms. Nason's first argument is without merit.

Ms. Nason's second argument is that the ALJ did not evaluate pertinent evidence about her chronic pain and the functional limitations caused by that pain. (ECF No. 17-1 at 6.) She points to evidence of her chronic pain and limitations caused by that pain contained in medical records from March 2005, May 2010, September 2012, December 2013, and July 2015. She argues that because these records were not discussed by the ALJ, and because they are inconsistent with the RFC determination, "it is impossible to determine whether these opinions were properly rejected, or simply ignored." (*Id.* at 8.)

Ms. Nason points to a March 22, 2005, treatment note from Dr. Cindy Zhang. (Tr. 376.) Although the note recites Ms. Nason's self-reported "intractable chronic thoracic back pain" that had a "tremendous negative impact on the quality of life, physical activities and function status," the note predates the alleged disability onset date by approximately five years. As the ALJ noted in the decision, Ms. Nason has reported only mild and moderate pain levels on several occasions since the alleged disability onset date. (Tr. 21, 815-16, 872, 1260, 1528-29, 1557-58, 1579.) The ALJ properly considered Ms. Nason's more recent reports of mild to moderate pain levels.

Ms. Nason also cites a May 14, 2010, spine evaluation that indicates that she has a decreased ranged of motion and mobility. (Tr. 677-79.) However, other medical records since that time indicate that that she has no manipulative difficulty and has a normal range of motion in her shoulders. (Tr. 852-53, 891-92, 1601.) The ALJ's RFC determination, which does not

---

[5] The Acting Commissioner correctly notes that even if the ALJ had attributed significant weight to the most restrictive State agency opinion, Ms. Nason would still have been able to perform her past relevant work as a graphic designer because that job is performed at a sedentary exertional level. (ECF No. 20-1 at 6.)

restrict Ms. Nason's range of motion, is supported by substantial evidence.

Ms. Nason points to a September 14, 2012, physical therapy consultation that indicated that she had low endurance and was deconditioned. (Tr. 821.) But this treatment note does not indicate how Ms. Nason's low endurance and deconditioned state result in any functional limitations. Furthermore, as the ALJ noted, these conditions were recognized by Ms. Nason's physicians, and they recommended that she begin exercising and becoming more physically active, as well as getting out of the house and working. (Tr. 21, 824 , 838, 846, 856.) The ALJ properly considered evidence related to Ms. Nason's ability to be active, including the contemporaneous recommendations that she received from her physicians.

Next, Ms. Nason argues that the ALJ should have considered a December 4, 2013, treatment note that recommended that she only perform light housework. (Tr. 1241.) However, the same treatment note indicates that Ms. Nason had run out of her pain medications at the time that she was seen, which contributed to the exacerbation of her pain at that time. (Tr. 1238.) As discussed above, Ms. Nason reported on several other occasions that she only had mild or moderate pain. Furthermore, the recommendation of this provider is inconsistent with the numerous recommendations of Ms. Nason's other physicians that she should exercise regularly, become more active, and start working.

Finally, Ms. Nason argues that the ALJ should have considered a July 16, 2015, treatment note that concluded that she is not "capable of keeping a job secondary to her . . . medical conditions." (Tr. 1557-58.) The regulations provide that certain opinions "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." Dr. Shockley's opinion that Ms. Nason is not capable of working because of her medical conditions is not a medical opinion because it concerns an issue reserved to the Commissioner. *Id.* 20 C.F.R. §§ 404.1527(d), 416.927(d). In addition, Dr. Shockley's treatment note itself indicates that Ms. Nason had recently started working on a part-time basis, that her pain was at a level of 3.5 out of 10 (despite having last used oxycodone a month prior to the visit), and that losing weight has helped with her overall pain. These statements are inconsistent with a finding that Ms. Nason is unable to work because of her medical conditions, and the ALJ properly relied on other evidence that her pain and impairments did not preclude her from working.

Ultimately, the Court's review of the ALJ's decision is confined to whether the decision is supported by substantial evidence and whether correct legal standards were applied. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The Court will not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Id.* While an ALJ must consider "all of the relevant medical and other evidence" in assessing a claimant's RFC, 20 C.F.R. §§ 404.1545, 416.945, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec'y*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). Because the ALJ properly considered the medical evidence of record and because the RFC assessment is supported by substantial evidence, this Court will not substitute its own judgment for that of the ALJ.

Ms. Nason's third argument is that the ALJ did not properly evaluate her obesity. She does not explain, however, what is lacking in the ALJ's decision. Although the ALJ found Ms. Nason's obesity to be a severe impairment and addressed it in the RFC discussion only briefly, Ms. Nason does not point to any evidence that her obesity causes additional limitations that are not included in her RFC. *See White v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-506, 2017 WL 1102719, at *2 (D. Md. March 23, 2017) ("[I]t is the claimant's burden to provide evidence of the functional limitations caused by her severe impairment, including obesity."). Here, the ALJ properly acknowledged that Ms. Nason's obesity is a severe impairment, cited to medical records that discussed Ms. Nason's obesity, and considered her obesity in combination with her other impairments in determining the RFC. For this reason, Ms. Nason's argument is without merit.

Mr. Nason's fourth argument is that the ALJ did not properly evaluate her credibility about her subjective symptoms. In determining a claimant's RFC, the ALJ must evaluate the claimant's subjective symptoms using a two-part test. *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); 20 C.F.R. §§ 404.1529(a), 416.929(a). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). At this second stage, the ALJ must consider all available evidence, including medical history, objective medical evidence, and statements by the claimant. *Id*. To determine the credibility of a claimant's statements, the ALJ "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." SSR 16-3p, 2016 WL 1119029 (S.S.A. March 16, 2016). An ALJ must "articulate which of a claimant's individual statements are credible, rather than whether the claimant is credible as a general matter." *Bostrom v. Colvin*, 134 F. Supp. 3d 952, 960 (D. Md. 2015); *see also Mascio v. Colvin*, 780 F.3d 632, 640 (4th Cir. 2015) ("Nowhere, however, does the ALJ explain how he decided which of [the claimant's] statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering [the claimant's] residual functional capacity.").

The ALJ properly evaluated the credibility of Ms. Nason's statements. The ALJ noted that the medical records related to Ms. Nason's generative disc disease "indicate complaints of pain, but few clinical findings." (Tr. 21.) In addition, Ms. Nason's physicians prescribed "mostly routine care with medication and conservative therapy." (*Id.*) Regarding Ms. Nason's subjective complaints of pain, the ALJ noted that on several occasions she reported only moderate pain. (*Id.*) She was regularly advised by her physicians to exercise, become more active, and to begin working. (*Id.* at 21-22.) The ALJ's explanation is sufficient to allow this Court to determine that the ALJ's findings are supported by substantial evidence and that the findings were reached through the application of the proper legal standards. For this reason, Ms. Nason's argument is without merit.

For the reasons set forth herein, Ms. Nason's Motion for Summary Judgment (ECF No. 17) will be **DENIED**, and the Acting Commissioner's Motion for Summary Judgment (ECF No. 20) will be **GRANTED**. The Clerk is directed to **CLOSE** this case. Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/
Timothy J. Sullivan
United States Magistrate Judge